## SUSTAITA v. VALLE.
### No. 8535.

Court of Civil Appeals of Texas. San Antonio. Feb. 4, 1931.

On Motion for Rehearing, March 18, 1931.

On Second Motion for Rehearing, April 29, 1931.

G. O. Brown and Samuel Belden, both of San Antonio, for appellant.

G. Woodson Morris, of San Antonio, for appellee.

COBBS, J.

Isidora Garcia, during his lifetime, instituted this suit against Jose Sustaita, to recover damages on account of severe and permanent injuries, alleged to have resulted from an automobile accident between an automobile in which the plaintiff was a passenger and one driven by the servant of appellant. He alleged that he was a passenger in an automobile being operated by a third party, and, when said automobile arrived at the intersection of Dolorosa street and South Flores street in the city of San Antonio, Bexar county, Tex., the automobile operated by the servant of appellant suddenly crashed into the automobile in which said plaintiff was riding and threw him violently upon the pavement. This accident occurred on October 9, 1927.

About July, 17, 1929, Isidoro Garcia, the original plaintiff, died, and Senobia Valle, appellee, intervened in the cause and filed her fourth amended original petition, in which she alleged that she was the daughter and sole surviving heir at law of said Isidoro Garcia, that there was no administration upon his estate, and that there was no necessity for an administration, and asked that the suit proceed in her name as plaintiff.

Appellee alleged that, on account of the negligence of defendant's agent in the operation of said automobile at the time and place, as aforesaid, her deceased father was severely and permanently injured, and that he died as a result of said injuries in the city of San Antonio, Texas, on or about July 17, 1929, and that, by reason of the wrongful death of her father, she has been damaged by appellant in the sum of $20,000. Appellee also sought to recover the damages sustained by her father from the time of his injury until he died.

The case was submitted to a jury on special issues, and they returned answers favorable to appellee, finding the damages sustained by Isidoro Garcia to be $500 and the damages to the appellee, his daughter, to be $1,500.

■ We think the allegations are sufficient to show that Isidoro Garcia was damaged, and the manner in which he was damaged, and overrule this assignment of error.

The intervention of the daughter was proper, and she was not required to file a new suit. It was the original cause of action. The cause of action survived to appellee, his sole heir. Articles 2078, 2086, and 5526, R. S. 1925. We think the appellee had the clear right to come into this suit and show the right to recover for the physical pain and mental anguish suffered by her father before his death. Gulf, C. & S. F. Ry. Co. v. Moore et al., 28 Tex. Civ. App. 603, 68 S. W. 559; M., K. & T. Ry. Co. of Texas v. Groseclose (Tex. Civ. App.) 134 S. W. 736. Also see article 3353a, Rev. Statutes 1895.

■ There was no request made by appellant for an issue as to whether or not the action of the deceased in riding in the automobile at the rate referred to in special issue No. 24 was the proximate cause of his injuries. There was no such issue presented. A finding thereon adverse to the plaintiff would have constituted a complete defense to plaintiff's recovery, so the failure of defendant to submit an issue of proximate cause was a waiver thereof. Ormsby et al. v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

Senobia Garcia Valle, appellee herein, testified as follows: "I said I was the daughter of Isidoro Garcia. I am a widow. I have been a widow more than 20 years. I was born in Mexico and came to the United States in 1908 with my husband. My husband died in 1910. After that I lived by myself. My father came to this country in 1904. After that he lived in Falfurrias, Texas. He lived down there with a person he was working for. I have lived with my father in the United States here. I lived with him when I was left a widow which was 20 years ago. My father and I lived in Falfurrias. We lived there from 1910 to 1914. My father made the living when we were living together. We lived in Falfurrias three years and going on four. There were no other members of the family besides my father and myself. I had one little girl. From Falfurrias I came here to visit some relatives and my father stayed there. He came to San Antonio in 1920. I lived at that time on Morales Street with a lady. My father was the one who was furnishing me my living because I didn't work. As to whether or not my father came to live with me later, from 1920 until the day he died he was in my company. He was with me from 1920 until the day he died he was in my company. He was with me from 1920 until the day he died. My daughter and my father and myself lived together here in San Antonio, Texas. My father had two trades, carpenter and baker. We lived here in San Antonio at several places. As to what my father made a day, when he had regular work he used to make $12.00 and $15.00 a week. He kept up the family. I know when he was injured. It was in October of 1927. He was working before he was injured. At that time we were living at 412 North San Saba. Before his injury he was in good health. He had not been sick before that. I said that I remember the day he was injured. At the time he was injured he was working at the Sentinel Restaurant. He was washing dishes there because he didn't have any other work. I learned that he had been injured the day he got hurt which was on Sunday, on the 9th day of October, 1927. I saw him that day. When I came home from church he was in bed and I asked, 'Father, what's the matter with you?' I was surprised to see him in bed. I examined his body and found a blow here (indicating).

There was a bump there. I pulled up his shirt and I saw where he had a blow there. Then I went and got some turpentine and put some on there and put a bandage around him. I rubbed him and put a bandage around him. You could see that he was very sick from the blow. He did not work that day. He stayed in the house that day and he stayed in the house the next day. He was confined to his bed three weeks and during that time he appeared to be in pain. He felt sick. That's why he did not get up from bed. He lost his employment and did not go back to work after that. When he got up after three weeks he had to walk with a walking stick. There were steps going up to our house and he was not able to go up and down those steps like he did before. Afterwards I went to work but for three weeks I didn't work. I didn't work for three weeks because my father was in bed but after that I went to work at a house here doing some sewing. I did not leave anybody there with him because I didn't have anybody to leave. The kind of work I do is ironing. After that my father did not work any more but before his injury he worked. My father died on the 17th day of July, 1929. He walked with a cane after the injury. I was there when my father died. I got there when I went to my dinner because I used to eat with him. I would go to work in the morning and come back at noon and eat with him. I saw him that morning on the 17th of July, 1929, and the next time I saw him was when I came and found him dead. That was at 412 North San Saba. After the injury my father was bent and appeared to be suffering plenty of pain. He would walk bent down and appeared to be suffering plenty of pain. That appearance lasted all the time up until the day he died. After the injury I maintained myself and daughter and I do it now."

Appellee made suggestion of the death of her father and was permitted to intervene and prosecute this suit. There is shown no evidence of any debts, and therefore there was no necessity for any administration. Article 4675, R. S. (as amended by Acts 1927, c. 239, § 2 [Vernon's Ann. Civ. St. art. 4675]).

There is nothing shown against the right of the daughter to recover in this case. The father was an honest, hard-working, and capable man, supporting his daughter; a man who had two trades, that of a carpenter and baker. He was strong and hearty, and worked up to the very time of his injuries.

There was no evidence or pleading that required the submission of the question of invited guest or joint enterprise between deceased and the driver of the automobile.

■ On the proposition of the negligence of the defendant's agent in this case, there were on the part of plaintiff submitted twenty-three questions, to each and every one of which the jury rendered a finding in favor of plaintiff. This record shows that the driver of defendant's car was operating same with utter disregard for the rights of others in the use of the public highway. By his own statements and out of his own mouth he shows conclusively who caused the accident. He said on cross-examination: "He tried to get out of my way but I hit him in the back. The engine of his car was facing South Flores. It knocked off just one wheel. At that time the brakes on my car were not very good and I couldn't stop it right quick because my work don't permit me to keep good brakes all the time because I am running all the time. If I could have stopped it right there he could have gone on by but I didn't stop here." So we see that he is condemned by his own words.

The plaintiff's real loss can never be replaced, but since the jury, after hearing all the evidence in this case and after a fair and impartial trial gave her the amount of this judgment, and believing that there are absolutely no errors herein, the judgment will be in all things affirmed.

### On Motion for Rehearing.

SMITH, J.

As stated in the original opinion, Isidoro Garcia brought this action against appellant to recover damages for personal injuries sustained by him in an automobile accident occasioned by the negligence of appellant. Subsequently, and during the pendency of the suit, Garcia, the original plaintiff, died as a result of said injuries, whereupon his daughter, Senobia Valle, intervened, and, setting up the fact of the death of her father, continued to prosecute the suit in her individual name, upon the theory that the original cause of action survived to her as the sole heir at law of the decedent. She alleged that there was no administration upon the estate of the decedent, nor any necessity therefor. Upon the trial, however, she offered no proof of either of said facts, and those allegations stand unsupported by any evidence.

■ It is now well settled in this state, subject to certain clearly defined exceptions not applicable here, that, before heirs, as such, can maintain suit to recover upon a chose in action or other property belonging to the estate of their ancestors, they must both allege and prove that there is no administration pending upon the estate of the decedent, and no necessity for such administration. A petition which fails to allege those facts is subject to general demurrer, and, in the absence of affirmative proof of such facts, when alleged, the plaintiff cannot recover. 1 Tex. Jur. p. 66, § 45; Laas v. Seidel, 95 Tex. 443, 67 S. W. 1015; Richardson v. Vaughan, 86 Tex. 93, 23 S. W. 640; Youngs v. Youngs (Tex. Civ. App.) 16 S.W.(2d) 426; Id. (Tex. Com. App.) 26 S.W.(2d) 191; Provident Life & Accident Ins. Co. v. Johnson (Tex. Civ. App.) 235 S. W. 650; Ry. v. Rogers, 15 Tex. Civ.

App. 680, 39 S. W. 1112; Johnson v. Bank (Tex. Civ. App.) 242 S. W. 293.

This rule was laid down in Texas generations ago (Green v. Rugely, 23 Tex. 539; Giddings v. Steele, 28 Tex. 748, 91 Am. Dec. 336; Webster v. Willis, 56 Tex. 468), and has been uniformly enforced by our courts. It is clearly applicable in this case, for, while appellee alleged that there was no administration upon the estate, nor any necessity therefor, no evidence whatever was introduced to establish those facts. As was said in Laas v. Seidel, supra, and approved in many other cases, including the recent case of Youngs v. Youngs, supra, "If the plaintiff in this case had alleged that there was no administration upon the estate of the decedent, and no necessity for such administration, but had failed to prove it upon a trial, judgment must have been given for the defendant." The rule is founded upon clear and cogent reasons, some of which are well stated in Giddings v. Steele, supra.

Appellant's motion for rehearing must be granted, and the judgment reversed and the cause remanded.

### On Second Motion for Rehearing.

Appellee asserted and recovered upon two distinct and severable causes of action against appellant, first, for damages on account of physical and mental injuries and loss of time incurred by the decedent by reason of the negligence of appellant; second, for damages on account of the wrongful death of the decedent.

■ Damages recovered in the first case properly belonged to the estate of the decedent, and were therefore recoverable by appellee individually only in the absence of administration of the decedent's estate, or of a necessity therefor.

■ Damages in the second case, for the wrongful death of the decedent, were recoverable by appellee individually, since they were not subject to the debts of the decedent, but vested directly in appellee immediately upon the wrongful death of her father. Article 4675, R. S. 1925 (as amended by Acts 1927, c. 239, § 2 [Vernon's Ann. Civ. St. art. 4675]).

In this state of the record, and in view of the full development of the case upon a proper trial thereof below, we have concluded that the justice of the case requires that we reverse the judgment in so far as damages were awarded to appellee for physical pain and suffering and loss of time of decedent, and that the cause of action thereon be remanded for another trial, but in all other respects the judgment will be affirmed, at the cost of appellee.

Reversed and remanded in part, and in part affirmed.