Maria Del Carmen Marquez AVILA
a/n/f of Cristina Jimenez, A
Minor, Appellant,

v.

ST. LUKE'S LUTHERAN HOSPITAL
and Marilyn Abel, L.V.N.,
Appellees.

No. 04–95–00773–CV.

Court of Appeals of Texas,
San Antonio.

May 14, 1997.

Rehearing Overruled July 23, 1997.

Opinion Concurring on Denial of
Rehearing July 23, 1997.

Rehearing Overruled Aug. 6, 1997.

James L. Branton, Carol P. Lomax, Branton & Hall, P.C., San Antonio, for Appellant.

Edward C. Mainz, Jr., Thornton, Summers, Biechlin, Dunham & Brown, L.C., San Antonio, George F. Evans, Jr., Thad D. Spalding, Ball & Weed, P.C., San Antonio, for Appellees.

Before RICKHOFF, LOPEZ and ANTONIO G. CANTU, JJ.

## OPINION

ANTONIO G. CANTU, Justice.

This is an appeal from the granting of motions for summary judgment in favor of St. Luke's Lutheran Hospital and Marilyn Abel, L.V.N., defendants below, in a wrongful death action brought by Maria del Carmen Marquez Avila, as next friend, for her daugh-

ter Cristina Jimenez, a minor, following the death of Ernesto Jimenez, Sr., the child's biological father.

We reverse and remand.

Ernesto Jimenez, Sr., died on January 26, 1989, while under the care and treatment of St. Luke's Lutheran Hospital (St. Luke's), Dr. Brant S. Mittler, and Marilyn Abel, L.V.N. (Abel).

On November 8, 1989, Ernest Jimenez, Jr., Jacquelyn Jimenez and Diana Jimenez–Bolfing, the adult children of Ernesto Jimenez, Sr., filed an action in their individual capacities and on behalf of the Estate of Ernesto Jimenez, Sr., under the Texas Wrongful Death Act[1] and the Texas Survivorship Statute[2] for damages sustained as a result of the wrongful death of their father, representing to the court that, as his children, they were the statutory beneficiaries entitled to share in the recovery. The petition did not mention any other beneficiary nor did it purport to be filed for the use and benefit of any others who might be entitled to any right or interest in the right of action set up and asserted in the suit.[3]

On November 12, 1991, the Jimenez adult children settled their wrongful death claim with the three defendants for an amount in excess of $500,000.00, and a final take nothing judgment was entered in favor of the three defendants.

On August 25, 1995, Maria Del Carmen Marquez Avila (Avila), as next friend of her minor daughter, Cristina, filed a second wrongful death action against St. Luke's and Abel.[4] In her petition, Avila alleged that she had lived in a monogamous relationship with Ernesto Jimenez, Sr. for two years prior to his death and that at the time of Ernesto Sr.'s death she was in her second month of pregnancy with Cristina, who was born on July 24, 1989. Avila further averred, that besides Cristina, the only other persons entitled to recover under the Texas Wrongful Death Act were the aforementioned adult Jimenez children;[5] and that they had already recovered their benefits.

On October 19, 1994,[6] St. Luke's filed its motion for summary judgment and also sought severance. This motion relied on the doctrine of res judicata as an affirmative defense and was supported by numerous documents, allegedly supporting the plea, including the final judgment and the release papers in the earlier suit. This motion was heard and overruled on November 30, 1994.

On February 27, 1995, Abel made her appearance by filing her original answer. Thereafter, on May 5, 1995, Abel filed her motion for summary judgment and severance setting up, as a bar to recovery, the doctrine of collateral estoppel.

In her motion, Abel alleged that she was entitled to judgment as a matter of law under the doctrine of collateral estoppel as a result of a judgment entered in a former cause of action, to wit: *Ernesto Jimenez, Jr., Jacqueline Jimenez and Diana Jimenez–Bolfing, Individually and on behalf of the Estate of Ernesto Jimenez, Sr. v. Dr. Brant S. Mittler, St. Luke's Lutheran Hospital and Marilyn Abel, L.V.N.*, cause no. 89–CI–19191, in the district court, 150th Judicial District, Bexar

---

1. TEX. CIV. PRAC. & REM.CODE ANN. §§ 71.001–.011 (Vernon 1986).

2. TEX. CIV. PRAC. & REM.CODE ANN. § 7.021 (Vernon 1986).

3. Neither of the Jimenez's three petitions identified any other party as having an interest as plaintiff, either directly or indirectly, in the wrongful death action. The underlying "Plaintiff's Third Amended Original Petition," the last live pleading, sought to recover on behalf of the decedent's estate, damages comprised of decedent's pain and mental anguish, medical expenses and funeral/burial expenses. The adult Jimenez children also sought to recover, for their own benefit, wrongful death benefits consisting of pecuniary losses, loss of companionship and society, and mental anguish.

4. Dr. Mittler was not included as a defendant in this second action.

5. The summary judgment proof, however, disclosed that the decedent's parents, statutory beneficiaries, were also alive. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 71.004(a) (Vernon 1986). They, however, so far as the record reveals, have never sought recovery of their benefits nor filed any disclaimer of interests.

6. At this time St. Luke's was the only defendant served with process and the only defendant of record.

County, Texas. In support of her motion, Abel attached substantially the entire record in the antecedent cause, including the various pleadings, discovery documents and final judgment. Also included were evaluation reports of various physicians and affidavits of attorneys attesting to the authenticity of the documents attached.

On May 9, 1995, St. Luke's filed its second motion for summary judgment in which it specifically adopted the argument[7] and proof in Abel's motion for summary judgment and also incorporated, by reference, the documentation attached to its previously overruled motion for summary judgment. Avila responded to both motions with some of the identical documentation relied upon by St. Luke's and Abel. Additionally, Avila attached affidavits attesting to her relationship with Ernesto Jimenez, Sr., attesting to the DNA test results confirming paternity of the deceased, confirming birth certificate registration for Cristina and attesting to Cristina's eligibility for social security benefits as a beneficiary of the deceased. Also included was the affidavit of Avila in which she denied knowledge of the existence of the previously filed wrongful death action until sometime in 1992. She further denied being consulted or consenting to any lawsuit being brought in her name or in the name of the child, Cristina, or in the settlement of same as it might refer to any claim arising out of the death of Ernest Jimenez, Sr. Other summary judgment proof consisted of affidavits corroborating Avila's claim to having had a long standing relationship with the deceased immediately prior to his death.

On June 13, 1995, the trial court addressed and granted both motions for summary judgment and entered a take-nothing judgment in favor of St. Luke's and Abel.

In three points of error, Avila asserts trial court error in granting the motions for summary judgment, claiming that the doctrines of collateral estoppel and res judicata[8] do not apply to the minor child. Moreover, Avila insists that there was no showing that privity existed between the minor child and the adult Jimenez children in the prior lawsuit for wrongful death brought by the adult Jimenez children. Finally, Avila asserts that the motions for summary judgment should not have been granted because a minor's claims cannot be compromised without court approval.

Under Rule 166a, Texas Rules of Civil Procedure, the party moving for summary judgment has the burden of establishing that there exists no material fact issue and that movant is entitled to judgment as a matter of law. When a defendant moves for summary judgment on the basis of an affirmative defense, he must conclusively prove all essential elements of that defense. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972); *see Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). Collateral estoppel is a defense constituting an avoidance and, therefore, is also an affirmative defense. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 802 (Tex.1994); *Cuellar v. City of San Antonio*, 821 S.W.2d 250, 256 (Tex. App.-San Antonio 1991, writ denied); Summary judgment may be granted upon a proper plea of collateral estoppel. *See Cuellar*, 821 S.W.2d at 256.

The party relying upon collateral estoppel must introduce into evidence the judgment and pleadings from the prior suit or the doctrine of collateral estoppel is not applicable in the second proceeding. *Scurlock Oil Co. v. Smithwick*, 787 S.W.2d 560, 562 (Tex. App.—Corpus Christi 1990, no writ); *City of Houston v. Houston Chronicle Publishing Co.*, 673 S.W.2d 316, 321 (Tex.App.—Houston [1st Dist.] 1984, no writ); *Kveton v. Farmers Royalty Holding Co.*, 149 S.W.2d 998, 1000 (Tex.Civ.App.—Galveston 1941, no writ).

---

7. Although St. Luke's previously relied upon the doctrine of res judicata in its first motion for summary judgment, it now relied upon the doctrine of collateral estoppel, as did Abel.

8. Inasmuch as collateral estoppel is the only theory relied upon in each of the motions for summary judgment we will not address res judicata, except in passing generally. *Hall v. Harris County Water Control & Improvement Dist. No. 50*, 683 S.W.2d 863, 867 (Tex.App.—Houston [14th Dist.] 1984, no writ).

■ We address Avila's first two points challenging the trial court's sustaining of St. Luke's and Abel's collateral estoppel defensive pleas. Collateral estoppel, often referred to as issue preclusion[9] and estoppel by judgment,[10] is much more narrow than res judicata, which bars litigation of claims connected with the cause of action or defense, which, with the use of diligence, might have been tried in a prior suit. *Russell v. Moeling,* 526 S.W.2d 533, 536 (Tex.1975).

■ The doctrine of collateral estoppel is designed to promote judicial efficiency, protect parties from multiple lawsuits and prevent inconsistent judgments by precluding the relitigation of issues. *Trapnell,* 890 S.W.2d at 801. Collateral estoppel, therefore, bars only the relitigation of identical issues of fact or law that were actually litigated and essential to the judgment in a prior suit. More specifically, the doctrine extends only to those matters [issues] that were either expressly determined or necessarily determined in an adjudication and not to those matters which might have been, but were not, raised and adjudicated therein. *See Barr,* 837 S.W.2d at 628. Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties. *Van Dyke v. Boswell, O'Toole, Davis & Pickering,* 697 S.W.2d 381, 384 (Tex.1985); *Wilhite v. Adams,* 640 S.W.2d 875, 876 (Tex.1982).

■ In Texas, the principle of estoppel by judgment applies whether the issue is determined by agreement or by the court. *Withers v. Republic Nat'l Bank,* 248 S.W.2d 271, 282 (Tex.Civ.App.—Beaumont 1951, ref'd n.r.e.).[11] In *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984), the supreme court identified three elements necessary to establish issue preclusion: (1)

the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. The further requirement of mutuality was abrogated to the extent that it is now required only as to the party against whom the plea of collateral estoppel is asserted. *Id.; Mower v. Boyer,* 811 S.W.2d 560, 563 (Tex.1991).

■ A defendant relying on collateral estoppel in his motion for summary judgment as an affirmative defense must conclusively prove all of the elements in order to prevail. Stated otherwise, the movant in a summary judgment motion has the burden of pointing out the issue or issues they wish to be estopped. *Trapnell,* 890 S.W.2d at 802.

■ Due process requires that collateral estoppel operate only against persons who have had their day in court, either as a party to the prior suit or as a privy. *Id.* at 803; *see also Blonder–Tongue Lab. Inc. v. University of Ill. Found.,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788, 800 (1971) ("... those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them ...") Therefore, if Cristina, through her next friend, has had her day in court, either as a party, privy or through actual and adequate representation,[12] the application of the doctrine meets the requirements of due process. *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361, 363 (Tex.1971); *Mower* at 563.

---

9. *See Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 628 (Tex.1992).

10. *See Eastland County v. Davisson,* 13 S.W.2d 673 (Comm.1929), *opinion approved, affirming,* 6 S.W.2d 782 (Tex.Civ.App.—Eastland 1928); *Heights Funeral Home v. McClain,* 288 S.W.2d 839, 843 (Tex.Civ.App.—Beaumont 1956, writ ref'd n.r.e.).

11. *But see McGuire v. Commercial Union Ins. Co.,* 431 S.W.2d 347, 352 (Tex.1968) (approved

agreed judgment based upon compromise settlement agreement disclaiming liability not an adjudication so as to preclude subsequent litigation).

12. This concept is sometimes referred to as the doctrine of virtual representation. *See Stroud v. Stroud,* 733 S.W.2d 619, 621 (Tex.App.—Dallas 1987, no writ); *Winston v. Griffith,* 108 S.W.2d 745, 751 (Tex.Civ.App.—Fort Worth 1937), *aff'd,* 133 Tex. 348, 128 S.W.2d 25 (1939).

■ Because the doctrine of collateral estoppel rests upon equitable principles and upon the broad principles of justice, its application involves considerations of fairness beyond those encompassed in the "full and fair opportunity"[13] scrutiny. *Trapnell,* 890 S.W.2d at 804. And the focus of the scrutiny should be on unfairness to the party against whom collateral estoppel is being asserted. *Id.* at 804, n. 14.

Avila's first argument focuses on the third element enumerated in *Bonniwell,* "that the parties were cast as adversaries in the first action." 663 S.W.2d at 818. We agree that the summary judgment proof tendered by both, St. Luke's and Abel, does not cast her as a party plaintiff. However, the doctrine of collateral estoppel is not precluded against her if she otherwise participated through adequate representation.

St. Luke's response is that even if all the statutory beneficiaries are not accounted for in the lawsuit, nevertheless, if those parties in the lawsuit exhibit the one action contemplated by the Wrongful Death Act, then those participating as plaintiffs effectively become the statutory representatives of all the beneficiaries, and hold in trust for the nonparticipating parties.[14] St. Luke's petition then concludes,

> Although the Jimenez children's petitions do not appear to bring the wrongful death action on behalf of all beneficiaries, both the release and indemnity agreement and final judgment expand those pleadings to indicate an intent to dispose of all claims on behalf of all beneficiaries[15] arising out of the death of Ernesto Jimenez, Sr. .

Abel's position is essentially the same. She cites a litany of cases all reciting essentially the same rule. The language in *Houston and Texas Central Railway Co. v. Moore,* 49 Tex. 31, 45 (1878) is representative;

> The plain and obvious purpose and effect of the statute are to give to the parties therein named an action similar in character to that which might have been maintained by the party injured if death had not ensued, when death ensues by the means or under the circumstances indicated in it. But, as counsel for appellant says, "the act pregnantly negatives the construction which would authorize a succession of independent actions by the several parties entitled." Unquestionably, it may be brought by all or any one of the parties; but whether brought by one or all, it is brought for the sole and exclusive benefit of the surviving husband, wife, child or children, and parents of the deceased, who are alive at the date of the recovery. If the suit is brought by only one of the parties entitled, and he dies pending the action, it does not abate, but it may be prosecuted to judgment in the name or names of some one or more of the parties entitled. Unquestionably, all parties entitled to share in the recovery may, and no doubt should, more appropriately join in the suit; but if some of them fail or neglect doing so, any one of them may maintain and prosecute it; but he must do so for the benefit of the other parties as well as himself. If a recovery is had, whether the suit is brought by one or all, the amount recovered, "shall be divided amongst the persons entitled under the act, or such of them as shall then be alive,

---

13. See the first element in *Bonniwell,* 663 S.W.2d at 818.

14. In fact the motion for summary judgment filed by Abel and adopted by St. Luke's must stand or fall on the basis urged in their motions, "... there can be no closer privity than that which exists between siblings making a claim for the death of those siblings' parents."

15. We do not believe that intention alone will suffice to bind those parties not joined in the pending action. Such intention must affirmatively appear of record. In *Brotherhood of R.R. Trainmen v. Price,* 108 S.W.2d 239, 243 (Tex.Civ.

App.—Galveston 1937, writ dism'd), the court, citing to Corpus Juris, vol. 21, p. 287, stated: "Where a suit is brought by or against a few persons in a representative capacity, that fact must be alleged of record, so as to present to the court the question whether sufficient parties are before the court properly to represent the rights of all, and in the absence of such an averment the rights of the other members of the class sought to be represented will not be affected by the proceedings." · *See also Cook v. Wilmeth,* 166 S.W.2d 359, 365 (Tex.Civ.App.—Eastland 1942, no writ) (one who sues for the use and benefit of another should incorporate in his petition appropriate allegations of same).

in such shares as the jury shall find and direct."

St. Luke's concedes that the arguments of Avila on behalf of Cristina would be meritorious under most personal injury scenarios, but contends that because the claim arises under the Wrongful Death Act, a different result is compelled. *See, e.g., San Antonio St. Ry. v. Renken*, 15 Tex.Civ.App. 229, 38 S.W. 829, 832 (1897, writ ref'd) ("It is true, ordinarily, that a person cannot be made a party in a suit without his knowledge or consent, but the action for damages for the death of a person is a statutory one, which must be governed by the language of the statute and not by general rules"); *see also Galveston, H. & S.A. R.R. Co. v. Le Gierse*, 51 Tex. 189, 199 (1879) ("The right to such an action in our courts being, then, given by express enactments, parties who seek to avail themselves of their benefits must be governed by their provisions").

St. Luke's says that privity exists because Cristina's interests were represented by the adult children of Ernesto Jimenez, Sr. in the first wrongful death action. This is true, St. Luke's insists, because the very nature of the Wrongful Death Act creates for the suing beneficiaries, an "implied relationship" as representatives of those beneficiaries omitted from the action. If this proposition be true, we must disregard over a century of case law requiring that trials be abated,[16] new trials be granted,[17] cases be reversed and remanded [18] and judgments be set aside by bill of review [19] when an omitted beneficiary cries out, "Wait a minute, what about me?"

 Under the Texas Wrongful Death Act, TEX. CIV. PRAC. & REM.CODE ANN. §§ 71.001 et. seq.,[20] a wrongful death claim

---

16. *Ft. Worth & D.C.R. Co. v. Wilson*, 85 Tex. 516, 22 S.W. 578, 579 (1893); *International & G.N.R. Co. v. Howell*, 105 S.W. 560, 561–62 (Tex.Civ.App.—San Antonio 1907), *aff'd*, 101 Tex. 603, 111 S.W. 142 (1908)

17. *East Line & Red River R. Co. v. Culberson*, 68 Tex. 664, 5 S.W. 820, 821–22 (1887); *Dallas & Wichita R.R. v. Spiker*, 59 Tex. 435, 437 (1883); *Vernon Cotton Oil Co. v. Catron*, 137 S.W. 404, 405 (Tex.Civ.App.—Texarkana 1911, no writ); *El Paso & N.E.R. Co. v. Whatley*, 76 S.W. 589, 590 (Tex.Civ.App.—El Paso 1903, no writ).

18. *Webb v. Huffman*, 320 S.W.2d 893, 900 (Tex. Civ.App.—Amarillo 1959, writ ref'd n.r.e.).

19. *See Greathouse v. Fort Worth & Denver City Ry.*, 65 S.W.2d 762, 765 (Tex. Comm'n App.1933, holding approved); *Taylor v. San Antonio Gas & Elec. Co.*, 93 S.W. 674, 676 (Tex.Civ.App.—San Antonio 1906, writ ref'd); *DeGarcia v. San Antonio & A.P. Ry.*, 90 S.W. 670, 670 (Tex.Civ.App.—San Antonio 1905, no writ).

20. Pertinent portions of the Wrongful Death Act now codified at §§ 71.004 and 71.010 TEX. CIV. PRAC. & REM.CODE ANN. (Vernon 1986) provide:

§ 71.004. **Benefitting From and Bringing Action**
(a) An action to recover damages as provided by this subchapter is for the exclusive benefit of the surviving spouse, children, and parents of the deceased.
(b) The surviving spouse, children, and parents of the deceased may bring the action or one or more of those individuals may bring the action for the benefit of all.

(c) If none of the individuals entitled to bring an action have begun the action within three calendar months after the death of the injured individual, his executor or administrator shall bring and prosecute the action unless requested not to by all those individuals.
§ 71.010. **Award and Apportionment of Damages**
(a) The jury may award damages in an amount proportionate to the injury resulting from the death.
(b) The damages awarded shall be divided, in shares as found by the jury in its verdict, among the individuals who are entitled to recover and who are alive at that time.
The immediate predecessors read:
**Art. 4675. Institution of suit**
Actions for damage arising from death shall be for the sole and exclusive benefit of and may be brought by the surviving husband, wife, children, and parents of the person whose death has been caused or by either of them for the benefit of all. If none of said parties commence such action within three calendar months after the death of the deceased, the executor or administrator of the deceased shall commence and prosecute the action unless requested by all of such parties not to prosecute the same. The amount recovered shall not be liable for the debts of the deceased. Const. Art. 16, sec. 26; Acts 1927, 40th Leg., p. 356, ch. 239, § 2.
**Art. 4677. Damages apportioned**
The jury may give such damages as they think proportionate to the injury resulting from such death. The amount so recovered shall be divided among the persons entitled to the benefit of the action, or such of them as shall then be alive, in such shares as the jury shall find by their verdict. *Id.*
Repealed by Acts 1985, 69th Leg. ch. 959, § 9(1), eff. Sept. 1, 1985.

derives wholly from the cause of action that the decedent could have asserted for personal injuries had he lived. *Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343, 347 (Tex. 1992). The designated surviving beneficiaries thus step into the decedent's shoes. *Houston & Texas Central Railway Co. v. Moore*, 492 Tex. 31, 45 (1878); *Washam v. Hughes*, 638 S.W.2d 646, 648 (Tex.App.— Austin 1982, writ ref'd n.r.e.). Thus, the act has been labeled as a derivative action. *Russell*, 841 S.W.2d at 347; *Davenport v. Phillip Morris, Inc.*, 761 S.W.2d 70 (Tex.Civ.App.— Houston [14th Dist.] 1988, no writ); *Pastor v. Champs Restaurant*, 750 S.W.2d 335, 336 (Tex.App.—Houston [14th Dist.] 1988, no writ). All or anyone of the parties, to whom the right of action is given, may bring suit and where it is brought by only one [or some but not all] of the parties, it *must appear* that the suit was brought for the benefit of all. TEX. CIV. PRAC. & REM.CODE ANN. § 71.004(b)(Vernon 1986). *De Garcia*, 90 S.W. 670. Moreover, the suit may be brought for the benefit and use of those not actually prosecuting the claim without their knowledge or consent. *Dennis v. Gulf C. & S.F. Ry.*, 148 Tex. 387, 224 S.W.2d 704, 705 (1949). *Taylor v. San Antonio Gas & Electric Co.*, 93 S.W. 674, 675 (Tex.Civ.App.—San Antonio 1906, writ ref'd).

█ The act contemplates that only one suit shall be brought, which shall be for the benefit of all parties entitled to recover. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 71.004 (Vernon 1986). So when the suit is not prosecuted for the benefit of all of said parties, and this is developed during the trial, it is the duty of the court, when requested in a motion for new trial, to set aside the verdict, *Ft. Worth & Denver City Ry. Co. v. Wilson*, 3 Tex.Civ.App. 583, 24 S.W. 686, 687 (1893) *rev'd on other grounds*, 85 Tex. 516, 22 S.W. 578 (1893) because all the beneficiaries named in the act are necessary parties.

21. The underlying purpose is to prevent the defendant from being subjected to a double payment to any one beneficiary. *Nelson v. Galveston, H. & S.A. Ry. Co.*, 78 Tex. 621, 14 S.W. 1021, 1023 (Comm. 1890, opinion adopted).

22. *See e.g. Taylor*, 93 S.W. at 674 (Tex.Civ.App.—San Antonio 1906, writ ref'd).

*Dennis v. Gulf C. & S.F. Ry. Co.*, 221 S.W.2d 352 (Tex.Civ.App.—Beaumont 1949) *cert. fd. ques. ans.* 148 Tex. 387, 224 S.W.2d 704 (1949); *San Antonio & A.P. R. Co. v. Mertink*, 101 Tex. 165, 105 S.W. 485, 485 (1907).

█ The provision of the act requiring all of the beneficiaries to be parties was enacted chiefly for the benefit of the defendant in such suit, to protect it against the bringing of several suits arising out of the same transaction [21]; and if it neglects to require this to be done, those who are not parties are not precluded by a judgment rendered in a case brought by the other beneficiaries. *Id.; See Schwing v. Bluebonnet Express, Inc.*, 470 S.W.2d 133, 137 (Tex. Civ.App.—Houston [14th Dist.] 1971) *aff'd in part, rev'd in part on other grounds*, 489 S.W.2d 279 (Tex.1973); *see also Brantley v. Boone*, 34 S.W.2d 409, 411 (Tex.Civ.App.— Eastland 1931, no writ); *Galveston, H. & S.A. Ry. Co. v. Contreras*, 31 Tex.Civ.App. 489, 72 S.W. 1051, 1051 (1903, no writ);. Thus, a defendant's failure to raise the nonjoinder issue may result in its waiver. *Schafer v. Stevens*, 352 S.W.2d 471, 474 (Tex. Civ.App.—Dallas 1961, writ dism'd). *San Antonio Portland Cement Co. v. Gschwender*, 191 S.W. 599, 599–600 (Tex.Civ.App. 1917).

█ Although the Act speaks of a single suit, it is intended that the single suit be one where all of the beneficiaries appear as plaintiffs actively presenting their claim, or one in which one or some of the beneficiaries purport to prosecute a claim for the benefit of all entitled under the act. *Brantley*, 34 S.W.2d at 411.[22] All of the parties who are to share in the recovery must appear on the face of the petition, and the judgment should award to each of the parties for whose benefit the action is brought the share as found and directed by the trier of fact. *Moore*, 49 Tex. at 46.

(Petition stated, "Plaintiff would further show unto your honor that she brings and prosecutes this amended petition for the use and benefit of herself, the children and parents of said Morris Scott, and all others entitled to any right or interest in the right of action set up and asserted in this suit.")

When it appears from an inspection of the petition that it does not contain the proper averments to enable the court to distribute the damages among all entitled as contemplated by the statute, it is subject to special exception, plea in abatement or some other appropriate pleading. *See Schafer*, 352 S.W.2d at 490; *Le Gierse*, 51 Tex. at 200. Thus, the defendant may be placed on notice that the action does not include all the necessary parties, as participants or in a represented capacity.[23] If the defendant chooses not to object in some manner or except to the pleadings, the defendant runs the risk that the missing beneficiaries will not be precluded from pursuing their claims by a judgment to which they were not parties. *See Southern Pacific Co. v. Tomlinson*, 163 U.S. 369, 375, 16 S.Ct. 1171, 1173, 41 L.Ed. 193, 196 (1896) (construing territory of Arizona Wrongful Death Statute copied from Tex. Rev.Stat. of 1879, §§ 2899–2909) ["... leaving the defendant open to the danger of another suit by those persons to obtain the damages of which the present plaintiff has undertaken to deprive them."];*Wilson*, 24 S.W. at 687. *Galveston H & S.A. Ry. Co. v. Kutac*, 72 Tex. 643, 11 S.W. 127, 128 (1889, opinion adopted).

Nevertheless, each beneficiary can only recover the damage that he has individually sustained by reason of such death; *Nelson v. Galveston, H & S.A. Ry. Co.*, 14 S.W. at 1023–24; *See also St. Louis, A & T. Ry. Co. v. Johnston*, 78 Tex. 536, 15 S.W. 104, 106 (1890); *Missouri Pac. Ry. Co. v. Henry*, 75 Tex. 220, 12 S.W. 828, 829 (Tex. 1889, opinion adopted). Accordingly, if the amount of compensation of any one of the beneficiaries has not been included in the first suit and he is entitled to it, no good reason can be given for holding him concluded by a judgment in which his rights were

not considered. *Nelson*, 14 at 1023–24. Only those for whom the action is prosecuted are bound by its decree. *Brantley*, 34 S.W.2d at 411. Thus, it has been said that a defendant who is liable to three beneficiaries under the act should be limited in liability to the same aggregate compensation, whether it be recovered in three suits brought by one, each of them, or one suit brought by all. *Nelson*, 14 S.W. at 1024.

Although the act has undergone numerous recodifications, the import of the act has remained essentially the same and the rule in *Moore*[24] holds true today. But running through the fiber of this rule persists the requirement that the single suit is being prosecuted for the benefit of all the eligible beneficiaries.[25]

In this appeal, the question is a narrow one. Does the summary judgment proof disclose privity between the adult Jimenez children and Cristina in the former suit? The concept of "privity" was discussed in some detail in *Benson v. Wanda Petroleum Company* where the court stated:

Section 83 of the Restatement of Judgments (1942) states that a person who is not a party but who is in privity with the parties in an action terminating in a valid judgment is bound by the rules of res judicata. A comment to this section says in part: "Privity is a word which expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties. * * * The statement that a person is bound by * * * a judgment as a privy is a short method of stating that under the circumstances and for the purpose of the

**23.** *See Gschwender*, 191 S.W. at 600 (petition did not allege that action was instituted for other statutory beneficiaries, but rather sought recovery for the sole benefit of the widow); *Spiker*, 59 Tex. at 436–37 (petition did not purport to prosecute action for the benefit of all the beneficiaries but rather for sole benefit of prosecuting plaintiff); *Le Gierse*, 51 Tex. at 200 (suit prosecuted in the individual name of one plaintiff alleging that damages accrued to her alone as reflected by judgment).

**24.** 49 Tex. at 45.

**25.** The one suit contemplated by the statute is to be brought for the benefit of all parties entitled to recover, not for the individual benefit of those parties prosecuting the claim. *See Culberson*, 5 S.W. at 821 and *Spiker*, 59 Tex. at 436–437; *Whatley*, 76 S.W. at 590.

case at hand he is bound by * * * all or some of the rules of res judicata by way of merger, bar or collateral estoppel." It has been emphasized that privity is not established by the mere fact that persons may happen to be interested in the same question or in proving the same state of facts. *Coleman v. Bosworth,* 180 Iowa 975, 164 N.W. 238 (1917); *Smith v. Wood, supra* [115 Ga.App. 265, 154 S.E.2d 646 (1967)]. Also, that privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right. *Hixson v. Kansas City,* 361 Mo. 1211, 239 S.W.2d 341 (1951); 46 Am.Jur.2d, Judgments, § 532 (1969). But it is also recognized that there is no generally prevailing definition of privity which can be automatically applied to all cases involving the doctrine of res judicata and the determination of who are privies requires careful examination into the circumstances of each case as it arises. 50 C.J.S. Judgments § 788 (1947); 46 Am.Jur.2d Judgments, § 532 (1969).

\* \* \* \* \* \*

It has also been said that the Restatement definition corresponds to results generally reached by the courts, the elements of which are summarized in these words: "[t]he word 'privy' includes those who control an action although not parties to it * * *; those whose interests are represented by a party to the action * * *; successors in interests * * *." Developments in the Law—Res Judicata, 65 Harv.L.Rev. 818, 856 (1952).

468 S.W.2d at 363.

*See also Getty Oil Co. v. Insurance Co. of N. Am.,* 845 S.W.2d 794, 798 (Tex.1992) (defining those in privity as those who exert control over an action, persons whose interests are represented by another party, or successors in interest).

There is no contention that Avila, on behalf of Cristina, controlled the action, although not a participating party to it. On the contrary, St. Luke's and Abel both state that neither was aware of her existence at the time of the first suit. Nor do we think that either St. Luke's or Abel seriously contends that Cristina is a successor in interest: as clearly her cause of action is derivative of Ernesto Sr.'s claim and does not flow through any of the adult children, nor grant her any beneficial interest in their claims, *See Benson,* 468 S.W.2d at 364, or in the estate of the decedent. *Seay v. Hall,* 663 S.W.2d 468, 472 (Tex.App.—Dallas 1983), *aff'd in part and rev'd in part on other grounds,* 677 S.W.2d 19 (1984).

We examine the summary judgment proof tendered by St. Luke's and Abel for evidence of privity, focusing particularly on the release and indemnity agreement as well as the judgment entered in the previous suit. Initially, we note that the release and indemnity agreement was not made a part of the summary judgment proof in Abel's motion for summary judgment.[26] St. Luke's adopted the motion filed by Abel but further incorporated by reference all the documentation attached to its previously overruled motion for summary judgment. However, Avila's summary judgment response to both motions includes the release and indemnity agreement and, we, therefore, consider them as they apply to both motions for summary judgment.

St. Luke's argues that the release and indemnity agreement entered into between St. Luke's and the adult children of Ernesto Jimenez, Sr. manifested an intent to adjudicate once and for all the wrongful death action based on the death of Ernesto Jimenez, Sr. It points to language in the release and indemnity agreement claiming that it purports to discharge St. Luke's from

**26.** Presumably it was not included in Abel's motion because the release contains the following language:

Plaintiffs expressly reserve their cause of action against nurse M. Abel, arising out of the incident described in Plaintiff's pleadings....

This covenant does not release and is not intended to release plaintiffs' cause of action, or any part thereof, against Nurse M. Abel, arising out of the incident described in plaintiff's pleadings.

all liability to all *heirs* of the estate of Ernesto Jimenez, Sr.[27]

The relevant portions of the release and indemnity agreement recite:

### RELEASE AND INDEMNITY AGREEMENT

The parties executing this Release and Indemnity Agreement are identified as ERNESTO JIMENEZ, JR., JACQUELYN JIMENEZ, DIANA JIMENEZ–BOLFING, individually and on behalf of the estate of Ernesto Jimenez, Sr., deceased. These parties will hereinafter be referred to as "RELEASORS," ...

. . . . .

The RELEASORS shall include the parties identified above but also shall include the heirs, executors, administrators, successors, assignees, representatives, agents, attorneys, sureties, and subrogees of the RELEASORS even though not otherwise expressly mentioned or named herein ...

. . . . .

This release is to be construed extremely broadly in favor of discharging RELEASEES of and from any and all claims, demands, cause or causes of action, liability, damages, any and all claims, demands, causes of action, liability, damages, responsibility which may or could be asserted, litigated,, arbitrated or otherwise raised by RELEASORS as against RELEASEES....

. . . . .

In making this Release, it is expressly understood that this is the [sic] merely the settlement of a disputed matter and UNDER NO CIRCUMSTANCES IS IT TO BE CONSTRUED OR INTERPRETED AS AN ADMISSION OR LEGAL OR MORAL RESPONSIBILITY FOR ANY DAMAGE OR INJURY CLAIMED BY RELEASORS.... This is merely the compromise of a highly disputed and claim of questionable merit.

. . . . .

The RELEASORS represent and warrant that no other person or entity has or has had any interest in the claims, demands, obligations, or causes of action referred to in this Release and Indemnity Agreement except as otherwise set forth herein. RELEASORS represent and warrant that they have the sole right and exclusive authority to execute this Agreement and receive the sum mentioned herein....

The final judgment recites:

On the date indicated below, came on to be considered the above styled and numbered cause, wherein ERNESTO JIMENEZ, JR., JACQUELYN JIMENEZ, and DIANA JIMENEZ–BOLFING, Individually and On Behalf of the Estate of ERNESTO JIMENEZ, SR. are Plaintiffs and DR. BRANT S. MITTLER, ST. LUKE'S LUTHERAN HOSPITAL and MARILYN ABEL, L.V.N. are Defendants. All parties came in person or by and through their attorneys and announced ready for trial. A jury was waived and all matters were submitted to the Court, who after consideration of matters and making findings as are authorized by law, is of the opinion that Judgment should be entered that the Plaintiffs recover nothing of and from the Defendants.

It is therefore, ORDERED, ADJUDGED AND DECREED that Plaintiffs, ERNESTO JIMENEZ, JR., JACQUELYN JIMENEZ, and DIANA JIMENEZ–BOLFING, Individually and On Behalf of the Estate of ERNESTO JIMENEZ, SR., do have and recover nothing of and from Defendants, DR. BRANT S. MITTLER, ST. LUKE's LUTHERAN HOSPITAL and MARILYN ABEL, L.V.N.; that all relief not herein granted is hereby denied, and that insofar as all causes of action that have been asserted herein or could have been asserted herein, Defendants shall go hence without day.

---

**27.** Wrongful death benefits do not belong to the decedent's estate. *Brown v. Edwards Transfer Co., Inc.,* 764 S.W.2d 220, 222 (Tex.1988); *See* *Sustaita v. Valle,* 38 S.W.2d 638 (Tex.Civ.App.—San Antonio 1931, no writ); *In Re McCoy,* 373 F.Supp. 870 (W.D.Tex.1974).

It is abundantly clear, from an examination of the prior judgment, together with the release and indemnity agreement,[28] that the judgment is not based upon an adjudication of the liability issue. This is even more apparent as it applies to Abel, inasmuch as the document specifically disavows any release from liability of the cause of action against Abel and expressly preserves the claim against her. Moreover, the release and indemnity agreement clearly indicates that Cristina's interest was not recognized by the adult Jimenez children as releasors.

The prior final judgment on its face purports to adjudicate the pending cause on the merits as evidenced by a judgment in favor of St. Luke's and Abel. Nevertheless, even though a judgment may on its face appear to be a final adjudication on the merits, circumstances properly before the trial court may warrant the conclusion that the judgment is in fact one reached by a settlement agreement. *State v. Reagan County Purchasing Co.*, 186 S.W.2d 128, 136 (Tex. Civ.App.—El Paso 1944, writ ref'd w.o.m.). Where it is shown that a judgment is based upon a compromised settlement agreement which expressly disclaims any liability on the part of the defendant, it cannot successfully be contended that the court's judgment included an adjudication of the issues of liability or negligence. *Cf. McGuire v. Commercial Union Ins. Co.*, 431 S.W.2d 347, 352 (Tex.1968).

In the instant case, neither St. Luke's nor Abel seriously construes the judgment in question as anything but an agreed judgment. In fact, both of them have denominated it as such in their respective briefs and we accept it to be such a judgment.[29]

A consent or agreed judgment is contractual in nature and in effect is a written agreement between the parties as well as an adjudication. *Wagner v. Warnasch*, 156 Tex. 334, 295 S.W.2d 890, 893 (1956). It is as conclusive as any other judgment as to the matters adjudicated, *Burguieres v. Farrell*, 85 S.W.2d 952, 964 (Tex.Civ.App.—Ft. Worth 1935), *writ dism'd*, 126 Tex. 209, 87 S.W.2d 463 (1935), but it is binding only as to the parties to the agreement and not as to any other party, *Lowe v. Ragland*, 156 Tex. 504, 297 S.W.2d 668, 673 (1957), unless the other parties are bound by the doctrine of virtual representation. *Sawyer v. Smith*, 552 S.W.2d 936, 940 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.). Thus, even a minor who is properly represented and his interests protected may be bound by a consent judgment. *See* Tex.R. Civ. P. 44; *Berry v. Lowery*, 266 S.W.2d 917 (Tex.Civ.App.—Dallas 1954), *aff'd in part and rev'd in part on other grounds*, 153 Tex. 411, 269 S.W.2d 795 (1954).

Abel argues that Avila is precluded from attacking the prior consent or agreed judgment because to do so constitutes an impermissible collateral attack on a final judgment which can only be done if the trial court rendering the judgment did not have jurisdiction to render it. *See Glunz v. Hernandez*, 908 S.W.2d 253, 255 (Tex.App.—San Antonio 1995, writ denied); *Block v. Employers Cas. Co.*, 723 S.W.2d 173, 177 (Tex.App.—San Antonio 1986), *aff'd* 744 S.W.2d 940 (1988). She further states that the prior consent judgment is conclusive as to the matters adjudicated and entitled to full effect. Avila however, does not challenge the validity of the prior judgment. She simply states, "I am not bound by it because I was never a party to it." [30]

A person who is not a party or privy to a party to an action in which a valid judgment other than a judgment in rem is

---

**28.** The release and indemnity agreement also forms a part of Avila's responses to both motions for summary judgment.

**29.** The problem with nonparties and consent judgments was recognized in *Kutac* when the court stated:

If several persons having the right to sue would be concluded by a judgment to which they were not parties, against one having the right of action with them, the result would be that one would have the power to compromise

and destroy the rights of all who could sue in the same action.

11 S.W. at 128.

**30.** A court may not enter a consent decree that imposes obligations on a party that did not consent to the decree either as a party to it or in a represented capacity. *Cf. Local Number 93 v. City of Cleveland*, 478 U.S. 501, 529, 106 S.Ct. 3063, 3079, 92 L.Ed.2d 405, 428 (1986).

rendered cannot directly or collaterally attack the judgment and is not bound by or entitled to claim the benefits of an adjudication upon any matter decided in the action. *Blonder–Tongue Lab.*, 402 U.S. at 322, 91 S.Ct. at 1439, 28 L.Ed.2d at 796.

 Our examination of the summary judgment proof tendered by St. Luke's and Abel compels but one conclusion, that privity between the adult Jimenez children and Cristina has not been demonstrated. It is undisputed that Cristina was not a party to the former action instituted by the adult Jimenez children. Moreover, it was not shown that she participated in, or exercised any control over, the trial in the former suit, or that she had a right to do so through representation or otherwise. Further, she was not shown to have any beneficial interest in the recovery of damages for personal injuries on behalf of the adult Jimenez children. In fact, nothing in the record before us discloses any apportionment of the damages recovered in the former suit. The record before us reflects that Cristina's interests were neither represented nor protected in the former action. We sustain Avila's first two points of error and find it unnecessary to address her third point of error, inasmuch as, one not before the court cannot be bound by any judgment entered. *Blonder–Tongue Lab.*, 402 U.S. at 322, 91 S.Ct. at 1439, 28 L.Ed.2d at 796; *Vineyard v. Heard,* 167 S.W. 22 (Tex.Civ.App.—San Antonio 1914), *aff'd,* 212 S.W. 489 (Tex. Comm'n App.1919, opinion adopted).

The judgment of the trial court is reversed and the cause is remanded to the trial court for trial on the merits.

RICKOFF, Justice, concurring on denial of rehearing.

Appellant, Maria Del Carmen Marquez Avila, as next friend of Christina Jimenez, filed suit against the appellees, St. Luke's Lutheran Hospital and its nurse, Marilyn Abel, for the wrongful death of Christina's biological father. Because the appellees had been sued in a prior suit by Christina's siblings, the appellees moved for summary judgment based on collateral estoppel. The trial court granted their motions, Avila appealed, and we reversed and remanded. We now deny, without opinion, the appellees' motions for rehearing. I write separately to address how the status of the law creates inequities in this case.

### Background

The summary judgment evidence shows that Ernesto Jimenez, Sr. died while being treated for acute epiglottitis at St. Luke's Hospital. Christina Jimenez was born posthumously. After Christina's birth, her adult siblings brought a wrongful death and survival action against Abel and St. Luke's Hospital. The petition did not mention Christina or any other beneficiaries [1] but was styled in the names of Ernesto Jimenez, Jr., Jacquelyn Jimenez, and Diana Jimenez–Bolfing, individually *and* on behalf of the estate of Ernesto Jimenez, Sr. The claims against the hospital were settled for $500,000; and, in November 1991, a take-nothing judgment was entered in favor of all defendants. The judgment was not appealed.

In 1994, Avila filed this wrongful death action on Christina's behalf against Abel and St. Luke's Hospital. While Christina's siblings were aware of her birth,[2] Christina was unaware of the prior lawsuit. Additionally, the defendants in the first suit were unaware of Christina at the time the first judgment was taken. Nonetheless, Abel and the hospital moved for summary judgment based on collateral estoppel. The trial court granted the motions, and Avila appealed. As explained in the majority opinion, Avila contended the trial court erred because collateral estoppel was not applicable under these facts. In eighteen points of error on rehearing, the appellees insist that collateral estoppel is applicable because privity existed between Christina and her older siblings. As

---

**1.** Ernesto's parents were still alive at the time this suit was brought. *See* Tex. Civ. Prac. & Rem. Code Ann. § 71.004(a) (Vernon 1997) (listing parents, children, and spouse of the deceased as beneficiaries).

**2.** Christina's mother appeared, three months pregnant, at the funeral.

explained below, I disagree, although I sympathize with the plight of the appellees.

### Standard of Review

When reviewing the motions for summary judgment in this appeal, we recognize that Abel and St. Luke's Hospital have the burden of establishing the lack of disputed issues of material fact. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex. 1985). Evidence favorable to Avila is taken as true, and every reasonable inference is resolved in her favor. *Id.* at 548–49.

Because Abel and the hospital moved for summary judgment on the affirmative defense of collateral estoppel, they must conclusively prove each element of the defense as a matter of law. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984); TEX.R. CIV. P. 94. Thus, they must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties or their privies were cast as adversaries in the first action. *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 820–21 (Tex. 1984).

### Discussion

Abel and the hospital argue the Wrongful Death Act creates privity between Christina and her siblings. There is no prevailing definition of privity that can be automatically applied to cases involving collateral estoppel. *Getty Oil Co. v. Insurance Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex.1992). The term connotes "those so connected in law with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." *Mendez v. Haynes Brinkley & Co.*, 705 S.W.2d 242 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.). Privity is not established by the mere fact that persons may happen to be interested in the same question or in proving the same set of facts. *Finger v. Southern Refrigeration Servs., Inc.*, 881 S.W.2d 890, 895 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Those in privity include persons who exert control over the action, persons whose interests are represented by another

party, or successors in interest to that party. *Getty Oil Co.*, 845 S.W.2d at 798.

The Wrongful Death Act does not specifically address privity but provides that:

(a) *An action* to recover damages as provided by this subchapter is for the exclusive benefit of the surviving spouse, children, and parents of the deceased.

(b) The surviving spouse, children, and parents of the deceased may bring *the action* or *one or more of those individuals may bring the action for the benefit of all.*

TEX. CIV. PRAC. & REM.CODE ANN. § 71.004 (Vernon 1997) (emphasis added). Abel and the hospital maintain that the italicized language creates only one cause of action; thus, the statutory beneficiaries become, by implication, representatives of all beneficiaries. Legally, the statute does not assume privity. Furthermore, factually, the record suggests Christina's siblings made every effort not to be responsible to their father's daughter, their half-sister.

Although there is little modern authority discussing the Wrongful Death Act's reference to "one action," an older Supreme Court opinion is instructive. In *Nelson v. Galveston, Houston & San Antonio Ry.*, 78 Tex. 621, 14 S.W. 1021, 1021 (Tex.1890), the decedent's wife and child brought a wrongful death claim that was settled before the decedent's second child was born. After its birth, the second child brought another wrongful death action, which the defendants claimed was barred by the prior settlement. *Id.* In rejecting the defendant's argument, the Supreme Court described the statute's "one action" as one brought for all beneficiaries or one to which all beneficiaries were joined as parties. *Id.*

If the mother and one child sue, and recover only the compensation awarded them by a verdict, and, as in this case, another child sues, it cannot be precluded on the ground that one action has been brought by all the beneficiaries, or that one beneficiary has brought the action for all, because no such action has been brought. If it had, it would be the one suit contemplated by the statute. The amount to which all the beneficiaries would be entitled, if it all, would

be included in that suit, and another could not be properly brought, and a second judgment, in whole or in part, recovered against the same defendant. But if the amount of compensation of any one of the beneficiaries had not been included in such suit, and he is entitled to it, upon no principle of reason should he be concluded by a judgment in which his rights were not considered. If the defendant is liable to three beneficiaries under the statute, the aggregate compensation to which they are justly entitled should be no greater, whether it be recovered in three suits brought by one, each of them or one suit brought by all.

*Id.,* 14 S.W. at 1023–24.

While this authority is more than a century old, its logic is sound.[3] When a decedent's spouse, children, and parents bring a wrongful death claim, their damages include individual losses of future pecuniary benefits, inheritance, and companionship, plus damages for mental anguish. TEX. CIV. PRAC. & REM.CODE ANN. § 71.004 (Vernon 1997); *Sanchez v. Schindler,* 651 S.W.2d 249, 251 (Tex.1983). In contrast, if they bring a statutory survival action, their recovery represents the injuries the decedent personally suffered. TEX. CIV. PRAC. & REM.CODE ANN. § 71.021 (Vernon 1997); *Harris County Hosp. Dist. v. Estrada,* 872 S.W.2d 759, 764 (Tex.App.—Houston [1st Dist.] 1993, writ denied). In other words, a wrongful death action, unlike a survival action, would not create potentially inconsistent or overlapping damages in a second suit unless a claimant sues on behalf of all statutory beneficiaries, as each is entitled to his or her own share of damages. *Cf. Henwood v. Richardson,* 163 S.W.2d 256, 258 (Tex.App.—Texarkana 1942, writ ref'd w.o.m.) (finding that failure to join parents in a wrongful death action was not error where the parents sustained no loss).

The Wrongful Death Act refers to "an action" and "the action," but it does not expressly limit the number of lawsuits that may be brought in connection with a single event. While the "one action" rule is designed to prevent a defendant from being subject to multiple suits, it is not a mandatory rule. *Cf.* TEX. CIV. PRAC. & REM.CODE ANN. § 71.004(b) (Vernon 1986); *Schwing v. Bluebonnet Express, Inc.,* 470 S.W.2d 133, 137 (Tex.App.—Houston [14th Dist.] 1971) (holding that right of joinder may be waived), *aff'd in part, rev'd in part on other grounds,* 489 S.W.2d 279 (Tex.1973); *Galveston, H. & S.A. R. Co. v. Kutac,* 72 Tex. 643, 11 S.W. 127, 128 (Tex.1889) (holding that first wrongful death action did not estop second action when the defendant waived its right to join all parties in the first action). In short, the Wrongful Death Act does not create privity among statutory claimants unless a beneficiary clearly represents all claimants.

In this case, there is no evidence that the adult children brought their wrongful death claim on behalf of all the statutory beneficiaries. Their petition is completely silent regarding those individuals, although the petition is necessarily styled "on behalf of the estate" to address the survival claim. When the children settled their claim, the release applied to *their* "heirs, executors, administrators, successors, assignees, representatives, agents, attorneys, sureties, and subrogees"; Christina is not a member of these categories. The release also states that the adult children "represent and warrant that no other person or entity has or has had any interest in the claims, demands, obligations, or causes of action referred to in this Release and Indemnity Agreement except as otherwise set forth within." This language creates a cause of action between the hospital and the adult children;[4] it does not limit

---

3. The hospital argues that *Nelson* improperly relied on *Galveston, H. & S.A. R. Co. v. Kutac,* 72 Tex. 643, 11 S.W. 127, 128 (Tex.1889), which involved the defendant's waiver of its right to join all parties in one action. While not directly on point, the Supreme Court was free to expand *Kutac's* holding. The hospital also argues that *Nelson* relied on an outdated version of the Wrongful Death Act, which apportioned damages "among the persons entitled to the benefit of the action." *Contra* TEX. CIV. PRAC. & REM.CODE ANN.

§ 71.010(b) (Vernon 1997) (apportioning damages "among the individuals who are entitled to recover"). While this change indicates some intent to alter *Nelson's* holding, the legislature would have expressly overruled *Nelson* if that was its intention. *See Enos v. State,* 889 S.W.2d 303, 305 (Tex.Crim.App.1994).

4. The release addresses St. Luke's Hospital and exempts Abel. Presumably, a second release not

Christina's right of recovery.[5] Finally, the judgment entered in the first suit is also silent regarding the representative capacity of the adult children.

Considering present law, there was no privity between Christina and her siblings that triggered collateral estoppel. Even if collateral estoppel applied in this case, the court has the discretion to refuse to apply it if doing so would be unfair. *Finger v. Southern Refrigeration Servs., Inc.*, 881 S.W.2d 890, 896 (Tex.App.—Houston [1st] Dist 1994, writ denied). In exercising that discretion, we consider the factors outlined by *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330–31, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). Those factors and my answers are:

1. Whether the use of collateral estoppel will reward a plaintiff who could have been joined in the earlier suit but chose to "wait and see." *This posthumously born child was unaware of her choice.*

2. Whether the defendant in the first suit had the incentive to litigate that suit fully and vigorously. *They did.*

3. Whether the second suit will afford the defendant procedural opportunities unavailable in the first suit that could cause a different result. *Not apparent in this record.*

4. Whether the judgment in the first suit is inconsistent with any earlier decision. *It is not.*

Even if some elements of collateral estoppel appeared, it would be inequitable to apply it against Christina Jimenez. But this result presents a corresponding inequity. It requires unsuspecting defendants to presume first, that people live irresponsibly and have out-of-wedlock children who will later surface and, second, that all settling siblings are too greedy and venal to reveal their existence. To properly defend themselves, defendants would be required to (1) request ad litems to protect against this eventuality, most often needlessly; or (2) generate a new lawsuit after seeking indemnification from the set-tling siblings for known survivors who should have been disclosed.

---

in our transcript addresses the claims against Abel.

**5.** Without citing authority, the hospital contends that the adult children had a duty to identify Christina and by failing to do so became her implied representatives.