NO. 07-01-0395-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



MAY 20, 2002



______________________________




JOE DEAN TROSTLE, APPELLANT



V.



INEZ TROSTLE, INDIVIDUALLY AND AS INDEPENDENT


EXECUTRIX OF THE ESTATE OF WINSTON E. TROSTLE,


SR., DECEASED, AND AS TRUSTEE OF THE WINSTON C.


TROSTLE, SR. ESTATE TRUST AND WINSTON E. TROSTLE,


SR. SEPARATE PROPERTY TRUST, APPELLEE




_________________________________



FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;



NO. 50,139-A; HONORABLE DAVID L. GLEASON, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 Appellant Joe Dean Trostle appeals from a take-nothing summary judgment entered
in favor of Inez Trostle (Inez), individually and as independent executrix of the estate of
Winston E. Trostle, Sr., deceased, and as trustee of the Winston E. Trostle, Sr. Estate
Trust and the Winston E. Trostle, Sr. Separate Property Trust in his lawsuit seeking
recovery for an alleged breach of fiduciary duty and fraud. Appellant also sued Winston
Earl Trostle, Jr. (Earl), but summary judgment was sought and awarded in favor of Inez
only and that cause of action was severed, which resulted in this appeal. In one issue,
appellant asserts error on the part of the trial court in granting summary judgment. We
affirm the judgment of the trial court.

 Winston Earl Trostle, Sr. was the father of appellant and Earl and the husband of
Inez, who was appellant's stepmother. He died on July 7, 1994, from a lethal injection of
insulin while he was a resident of Olsen Manor Nursing Home. Earl and Inez filed a
wrongful death lawsuit based on the circumstances surrounding his death and were
ultimately awarded approximately $13,000,000 in actual and punitive damages by a jury. 
Thereafter, the parties entered into a settlement agreement in which Earl and Inez
received $6,500,000. Appellant claimed that Inez and Earl misrepresented to him that he
was included in the lawsuit and disbursed all of the settlement funds, from which he
received nothing. He filed suit based on claims of fraud, breach of fiduciary duty, civil
conspiracy, and unjust enrichment and sought the imposition of a constructive trust, a
temporary injunction, an accounting, and an award of actual and punitive damages. 

 Inez filed both a traditional motion for summary judgment and a no-evidence motion
for summary judgment. The standards applicable to the review of each type of summary
judgment are so well established as to make their reiteration unnecessary. See Nixon v.
Mr. Property Management Co., Inc., 690 S.W.2d 546, 548-49 (Tex. 1985); Kimber v.
Sideris, 8 S.W.3d 672, 675-76 (Tex.App.--Amarillo 1999, no pet.). A no-evidence summary
judgment motion is properly granted if the respondent fails to present more than a scintilla
of probative evidence to raise a genuine issue of material fact as to an essential element
of respondent's case. Id. at 676. More than a scintilla of evidence exists when reasonable
and fair-minded people may differ in their conclusions. Burroughs Wellcome Co. v. Crye,
907 S.W.2d 497, 499 (Tex. 1995). In the order granting summary judgment, the trial court
did not specify the particular grounds upon which it relied, although at the hearing on the
motion, the trial court stated that it was granted on all grounds. In this state of the record,
we must affirm it if any of the grounds stated in the motion are meritorious. Carr v.
Brasher, 776 S.W.2d 567, 569 (Tex. 1989). 

 Inez asserted that she was entitled to summary judgment because appellant did not
suffer any damages with respect to his claims as a beneficiary of the estate. Appellant
argues that, because the estate was a party to the wrongful death lawsuit and the
settlement agreement also included the estate, he was entitled to a portion of the
settlement funds, which he did not receive. The wrongful death lawsuit was filed on May
19, 1995, on behalf of Inez and Earl in their individual capacities. On June 16, 1996, the
will of Winston Trostle, Sr. was admitted to probate, and Inez was appointed independent
executrix. The petition was then amended to include Inez in her capacity as independent
executrix and as trustee of the two testamentary trusts. The original lawsuit went to trial
on November 30, 1998, but no issue was submitted to the jury as to the survival claim of
the estate. The trial attorney, John Smithee, averred that the evidence showed that
Winston Trostle, Sr. became unconscious shortly after the insulin injection, and thus, there
was no evidence to support a finding of pain and suffering prior to death. 

 The jury verdict awarded $1,500,000 to Inez and $1,000,000 to Earl in actual
damages and awarded $10,000,000 in punitive damages. Judgment was entered only in
favor of Inez and Earl in their individual capacities. No judgment was awarded to the
estate or the trusts. Nevertheless, when a settlement agreement was reached, the estate
and the trusts were named parties to the settlement agreement, and it provided they
released any claims they had against the defendants and their insurance company. It is
undisputed that Inez did not distribute any of the settlement funds she received to the
estate or the trusts. 

 Appellant asserts that Inez should have submitted questions to the jury concerning
whether, and to what extent, Winston Trostle, Sr. suffered prior to his death, and she
should not have settled the claims of the estate and trusts while at the same time "directing
the settling insurance companies to omit the estate and trusts from the settlement
proceeds . . . ." He has cited no legal authority in support of that proposition. Smithee
testified that the estate and trusts were added to the wrongful death lawsuits only to
preserve whatever survival action might exist, but there was no evidence at trial to support
that action. Appellant has offered nothing to show such evidence did exist or that any error
occurred by the omission of such an issue to the jury.

 Attorney Robert Templeton, who represented Inez and Earl during the settlement
of the lawsuit, testified that the "driving force behind the settlement agreement and the
settlement amount was the judgment awarding over $13,000,000 dollars to Inez Trostle
and Earl Trostle individually for actual and punitive damages based on their wrongful
death claims, as well as prejudgment interest." He further averred that "[b]ecause the
judgment did not award any survival damages on behalf of the Estate or the Estate Trusts,
there were no survival damages allocated to the settlement amount." Additionally, he
stated that the defendants and insurance company acted in conformance with the ordinary
and customary practice in requiring as a condition of settlement that the estate and the
trusts be made parties and release their claims for the purpose of limiting the exposure of
the defendants and their insurance company to future litigation in connection with the
death of Winston Trostle, Sr. 

 The summary judgment evidence was sufficient to show the trusts and estate were
not entitled to any damages either by the verdict or the judgment, and no such damages
could have formed any basis for the money paid by virtue of the settlement agreement. 
Therefore, appellant, as a beneficiary of the estate, could not have suffered any damages
as a matter of law with respect to the survival action. 

 However, appellant also contends that Inez had a duty to include him in the
wrongful death lawsuit and he suffered damages as a result of her failure to do so. He
argues that section 71.004 of the Civil Practice and Remedies Code imposed a duty on her
to make all wrongful death beneficiaries parties to the lawsuit, and when the record does
not show that all beneficiaries have been made parties, the judgment cannot stand. 
Section 71.004 provides:

 (a) An action to recover damages as provided by this subchapter is for the
exclusive benefit of the surviving spouse, children, and parents of the
deceased. 


 (b) The surviving spouse, children, and parents of the deceased may bring
the action or one or more of those individuals may bring the action for the
benefit of all.


 (c) If none of the individuals entitled to bring an action have begun the action
within three calendar months after the death of the injured individual, his executor or administrator shall bring and prosecute the action unless
requested not to by all those individuals. 


Tex. Civ. Prac. & Rem. Code Ann. § 71.004 (Vernon 1997). 

 Winston Trostle, Sr. died on July 7, 1994, and the lawsuit was not filed until May 19,
1995. Therefore, appellant argues, Inez was required to prosecute the action on behalf
of all the beneficiaries. However, we note that the suit was filed by Inez and Earl prior to
the time Inez was appointed as executrix of the estate. Even though the filing of the
lawsuit did not take place within three months following the death of Winston Trostle, Sr.,
no executrix had been appointed prior to the time the lawsuit was filed by two of the
beneficiaries. (1) Indeed, the will was not admitted to probate until June 19, 1996, well over
a year after the lawsuit was filed. 

 Furthermore, although the statute appears to contemplate a single lawsuit, the
provisions of the act requiring all beneficiaries to be parties is primarily for the benefit of
the defendant to protect it from several lawsuits arising out of the same incident. Avila v.
St. Luke's Lutheran Hosp., 948 S.W.2d 841, 850 (Tex.App.--San Antonio 1997, writ
denied); Schwing v. Bluebonnet Exp., Inc., 470 S.W.2d 133, 137-38 (Tex.Civ.App.--
Houston [14th Dist.] 1971), rev'd in part on other grounds, 489 S.W.2d 279 (Tex. 1973). 
The defendant's failure to raise the issue may result in its waiver. Avila, 948 S.W.2d at
850; see also Schafer v. Stevens, 352 S.W.2d 471, 474 (Tex.Civ.App.--Dallas 1961, writ
dism'd). Moreover, each beneficiary can only recover the damages he has individually
sustained by reason of the death. Avila, 948 S.W.2d at 851. Beneficiaries who are not
included in the lawsuit have been found entitled to bring their own lawsuit to recover the
damages to which they individually may be entitled. Id. Thus, appellant had the right to
bring his own lawsuit if he had chosen to do so. 

 Moreover, appellant produced no evidence in the record to show that he would have
recovered damages because of the wrongful death of his father. He also fails to indicate
the amount of any pecuniary loss or the extent of mental anguish for which he might have
been entitled to recover. Thus, the actions or inactions of Inez in failing to include
appellant in the lawsuit were not the proximate cause of any determinable loss to him. 

 Appellant further complains that, as executrix and as his stepmother, Inez owed him
a fiduciary duty to inform him that he was not included in the wrongful death lawsuit
because she had a duty to apprize him of facts that might affect his rights. Although
appellant contends that Earl made affirmative representations to him that his rights were
being protected, it is not disputed that Inez made no such representations to appellant. 
In fact, the evidence shows that Inez and appellant had not communicated since prior to
the death of appellant's father. Therefore, Inez's liability in this regard, if any, can only be
predicated upon some duty on her part to provide appellant with information. Generally,
there is only a duty to speak when the parties have a confidential or fiduciary relationship
with one another. Insurance Co. of North America v. Morris, 981 S.W.2d 667, 674 (Tex.
1998). 

 The duty of an executor and trustee is to administer the estate or trust for the benefit
of the beneficiaries. Huie v. DeShazo, 922 S.W.2d 920, 924 (Tex. 1996). Executors and
trustees owe beneficiaries a duty of full disclosure of all material facts known to them that
might affect the rights of the beneficiaries. Id. at 923. When the estate was joined as a
party to the wrongful death lawsuit, it was for the purpose of asserting any survivor claim
that might be proven to exist. As we have already discussed, appellant suffered no
damages as a result of not being informed of the survivor action. 

 We must, therefore, determine whether Inez, as a result of some confidential
relationship, owed an independent duty to appellant to inform him of his exclusion as a
party to the wrongful death lawsuit or that she had not sued on behalf of all statutory
parties. Appellant insists that the "familial, formal and informal relationships existing
between Joe Trostle and Inez Trostle gave rise to a fiduciary duty." Where one person is
accustomed to being guided by the judgment or advice of another or is justified in believing
one will act in the best interest of another because of a family relationship, a confidential
relationship may arise. Thigpen v. Locke, 363 S.W.2d 247, 253 (Tex. 1962). Thus, an
informal relationship may give rise to a fiduciary duty in situations in which one person
trusts and relies on another whether the relationship is moral, social, domestic or personal. 
Schlumberger Technology Corp. v. Swanson, 959 S.W.2d 171, 176 (Tex. 1997). However,
mere subjective trust does not create a fiduciary relationship. Id. at 176; Locke, 363
S.W.2d at 253. The existence of such a relationship is determined from the actual facts
of the relationship between the persons. Id. 

 The only factual basis appellant asserts for the proposition that such a relationship
existed between Inez and himself is that Smithee "concluded the relationship was close
enough that he should rely on Inez Trostle's statements that Joe Trostle did not want to
be included in the lawsuit." (2) Whether or not Inez's attorney felt he was entitled to rely on
statements made by Inez provides no objective facts from which the nature of the
relationship between Inez and appellant may be determined. However, other summary
judgment evidence, including the testimony of both appellant and Inez, showed that they
were not particularly close because of some differences between Inez and appellant's wife,
and that appellant and Inez had not spoken to each other since before the death of
appellant's father. They apparently did not even speak to each other at the funeral. It
cannot be said that appellant relied on Inez for moral, financial, or personal support or
guidance. 

 Moreover, appellant testified in his deposition that, because of a telephone
conversation with Smithee in August 1998, he knew he had not been included as a party
to the wrongful death lawsuit and that the case was set to go to trial the following month. (3) 
He attempts to contradict this testimony with an affidavit in response to the motion for
summary judgment in which he avers he did not know he was not a party plaintiff or
entitled to any of the lawsuit proceeds until after the case went to trial. He further states
in that affidavit that Smithee did not inform him that he was not included in the lawsuit. 
However, an affidavit which conflicts with deposition testimony may not be used to raise
a fact issue with respect to a motion for summary judgment without an explanation. 
Farroux v. Denny's Restaurants, Inc., 962 S.W.2d 108, 111 (Tex.App.-- Houston [1st Dist.]
1997, no pet.); but see Thompson v. City of Corsicana Housing Authority, 57 S.W.3d 547,
557 (Tex.App.-- Waco 2001, no pet. h.) (holding that inconsistencies in the summary
judgment evidence of a single witness create a fact issue). The trial court sustained the
objections of Inez to appellant's affidavit, and that ruling has not been challenged on
appeal. Although appellant knew prior to trial that he was not a party to the lawsuit, he
made no attempt to intervene and did not immediately consult an attorney. We do not
believe that Inez had a duty to inform appellant that he was not a party to the wrongful
death lawsuit.

 Appellant further contends that genuine issues of material fact have been raised as
to a civil conspiracy to defraud. The elements of a civil conspiracy are (1) two or more
persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or
course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate
result. Operation Rescue-National v. Planned Parenthood of Houston and Southeast
Texas, Inc., 975 S.W.2d 546, 553 (Tex. 1998). Such a conspiracy existed, appellant
argues, because both Inez and Earl told Smithee that appellant did not want to be included
in the lawsuit for the purpose of depriving him of his opportunity to participate and the
proceeds therefrom. The elements of a civil conspiracy as already stated require
participation in some underlying tort. Tilton v. Marshall, 925 S.W.2d 672, 681 (Tex. 1996). 
Because we have determined that Inez had no duty to inform appellant he was not
included in the wrongful death lawsuit and entitled to bring his own wrongful death lawsuit,
and because there was no recovery by the estate with respect to any survivor claims, there
have been no unlawful acts as required. Therefore, appellant's conspiracy claim must
necessarily fail. 

 Appellant also challenges the trial court's failure to grant him equitable relief in the
form of the imposition of a constructive trust, a temporary injunction, the appointment of
a receiver, and an accounting. A constructive trust is imposed to redress wrong or prevent
unjust enrichment. Meadows v. Bierschwale, 516 S.W.2d 125, 131 (Tex. 1974). We have
already found that Inez did not commit a wrongful act and therefore she could not profit
from a wrong or be unjustly enriched. See Tripp Village Joint Venture v. MBank Lincoln
Centre, N.A., 774 S.W.2d 746, 750 (Tex.App.--Dallas 1989, writ denied). Thus, appellant
is not entitled to a constructive trust. 

 The purpose of a temporary injunction is to preserve the status quo pending a trial
on the merits. Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993). To be entitled to a
temporary injunction, an applicant must show a probable injury and a probable right of
recovery. Id. at 57. Once again, because we have determined that summary judgment,
which is a final disposition, was correctly granted, there is no necessity for a temporary
injunction to preserve the status quo. 

 Appellant cites no authority to support his argument that he is entitled to an
equitable accounting or the appointment of a receiver. Suffice it to say that because we
have concluded that appellant is not entitled to any of the settlement proceeds from the
lawsuit as an heir and Inez did not wrongfully exclude him from the wrongful death cause
of action, we can see no basis upon which to order an accounting or the appointment of
a receiver. 

 Appellant additionally asserts, however, that he is entitled to an accounting from
Inez as executrix of the estate based on section 149A(a) and (b) of the Probate Code. The
version of that section in effect at the time in question provided in pertinent part:

 (a) Interested Person May Demand Accounting. At any time after the
expiration of fifteen months from the date that an independent administration
was created and the order appointing an independent executor was entered
by the county court, any person interested in the estate may demand anaccounting from the independent executor. . . .


 (b) Enforcement of Demand. Should the independent executor not comply
with a demand for an accounting authorized by this section within sixty days
after receipt of the demand, the person making the demand may compel compliance by an action in the county court or by a suit in the district court. 
After a hearing, the court shall enter an order requiring the accounting to be

 made at such time as it deems proper under the circumstances. 

Tex. Prob. Code Ann. § 149A(a) and (b) (Vernon 1980). Appellant requested a voluntary
"complete accounting of the estate" by letter dated May 4, 1999, to the attorney
representing the estate. In response, the attorney indicated that an accounting would be
provided.

 This lawsuit was then filed on October 4, 1999, but no request for a statutory
accounting was made in the petition. In his first amended petition filed on December 15,
1999, and his second amended petition filed on July 10, 2000, appellant requested "an
accounting of all income, revenue, expenses, transactions, transfers, disbursements,
opportunities, investments of the Defendants, their agents, attorneys, representatives and
affiliated companies and family members since January 1994." However, this request was
not made under the provisions of the Probate Code and is much broader than the statutory
accounting required by the executor of an estate. In his response to the motion for
summary judgment, appellant requested for the first time both an equitable accounting and
an accounting pursuant to the Probate Code. Therefore, appellant's request for a statutory
accounting was not before the trial court at the time the summary judgment motion was
filed, and there was no amended pleading to support that request. See Jones v. Wal-Mart
Stores, Inc., 893 S.W.2d 144, 148-49 (Tex.App.--Houston [1st Dist.] 1995, no writ). Thus,
that complaint may not defeat the summary judgment. 

 In arguing that he presented a substantial amount of evidence to defeat Inez's no-
evidence summary judgment motion, appellant alternatively complains that an inadequate
amount of time had passed for discovery at the time the motion was filed, and thus it was
not yet ripe for the filing of such a motion. The basis asserted for this position is that
Smithee's deposition was taken on February 23, 2001, and significant revelations occurred 
"concerning the conduct of the Defendants and parties associated with them." Also,
documents were produced at that deposition which had not been previously produced. 
Therefore, he posits, these facts, coupled with his motion to recuse, greatly prejudiced his
ability to respond. 

 Appellant filed a motion for continuance of the summary judgment hearing on the
basis that he had filed a motion to compel "the production of documents which are
essential to Plaintiff's case" and a motion to recuse the trial judge who was a material fact
witness. The motion was denied, and appellant has not challenged that court's ruling. 
Moreover, appellant has failed to state any specific "significant revelations" which were
first learned at the Smithee deposition, or the nature of the documents which were
produced and the reasons why those documents being produced at that particular time
prejudiced his ability to respond to the summary judgment motion. 

 Rule 166a(i) provides in relevant part:


 (i) No-Evidence Motion. After adequate time for discovery, a party without
presenting summary judgment evidence may move for summary judgment
on the ground that there is no evidence of one or more essential elements
of a claim or defense on which an adverse party would have the burden of
proof at trial.

 

Tex. R. Civ. P. 166a(i). We review a court's decision on a request for continuance of a
summary judgment motion because of an inadequate amount of time for discovery under
an abuse of discretion standard, and the decision is made on a case specific basis. 
McClure v. Attebury, 20 S.W.3d 722, 729-30 (Tex.App.--Amarillo 1999, no pet.). The
existence of adequate time for discovery is determined by the nature of the cause of
action, the nature of the evidence necessary to controvert the motion, and the length of
time the case has been active. Specialty Retailers, Inc. v. Fuqua, 29 S.W.3d 140, 145
(Tex.App.--Houston [14th Dist.] 2000, pet. denied); Dickson Const., Inc. v. Fidelity & Deposit
Co. of Maryland, 5 S.W.3d 353, 356 (Tex.App.--Texarkana 1999, pet. denied). Other
factors may include the amount of time the motion has been on file, whether the movant
has requested stricter deadlines for discovery, the amount of discovery that has already
taken place, and whether the discovery deadlines that are in place are specific or vague. 
Fuqua, 29 S.W.3d at 145. 

 The record shows that the original petition in this lawsuit was filed on October 4,
1999. The motion for summary judgment was filed on January 25, 2001. Appellant's
motion to recuse was not filed until March 1, 2001, at the same time he filed his response
to the motion for summary judgment. The basis for that recusal motion was that the judge
was likely to be a material witness in the case because he refused to submit jury questions
in the wrongful death lawsuit brought by Inez and Earl which concerned appellant's rights. (4) 
The hearing on the motion for summary judgment took place on June 21, 2001, after
appellant's recusal motion had been ruled on. 

 Furthermore, every case is governed by a discovery control plan. Tex. R. Civ. P.
190.1. Inez asserts, and appellant has not contradicted the assertion, that this case was
governed by Level 2, under which all discovery must be conducted during the discovery
period, which begins when suit is filed and continues until the earlier of 30 days before the
date set for trial or nine months after the earlier of the date of the first oral deposition or
the due date of the first response to written discovery. Tex. R. Civ. P. 190.3(b)(1). While
evidence of the first written discovery does not appear in the record, the summary
judgment evidence shows that appellant, Earl and Inez were all deposed in July 2000, and
it was more than nine months later before the hearing on the motion for summary judgment
took place. The comment to the rule states that a "discovery period set by pretrial order
should be adequate time opportunity for discovery unless there is a showing to the
contrary, and ordinarily a motion under paragraph (i) would be permitted after the period
but not before." Id. Notes and Comments. Appellant has not alleged or shown that the
motion for summary judgment was filed prior to the end of the discovery period, and we
find no abuse of discretion on the part of the trial court in refusing to grant a continuance.

 Appellant also argues that his claims are not barred by the statute of limitations
because his causes of action accrued at the time of the settlement agreement between the
parties in the wrongful death lawsuit and the dispersion of the settlement proceeds, while
Inez asserts that the various causes of action began to accrue on the date the wrongful
death lawsuit was filed. The wrongful death lawsuit was filed on May 19, 1994, and this
lawsuit on October 4, 1999, more than four years later. However, the settlement
agreement in the wrongful death lawsuit was signed on May 27, 1999. We have discussed
the merits of the summary judgment motion as if the statute of limitations was not an issue
and found the trial court's granting of the motion to have been warranted. Therefore, it is
not necessary for us to rule on the limitations issue.

 Finally, in positing that he presented substantial evidence to defeat the no-evidence
motion for summary judgment, appellant argues the same evidence which we have already
discussed. Therefore, we overrule appellant's issue and affirm the judgment of the trial
court. 


 John T. Boyd

 Chief Justice


Publish.


1. The summary judgment evidence indicates that originally, the will was filed as a
muniment of title only.
2. Inez claimed she did not tell Smithee that appellant did not want to participate, but 
her attorneys contacted appellant and told her that was what appellant said.
3. The case did not actually go to trial until November 1998. 
4. Appellant's initial motion to recuse was denied on the basis that it did not comply
with Rule 18a of the Rules of Civil Procedure. Thereafter, appellant filed an amended
motion to recuse, which was denied on April 24, 2001. 


%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.EndnoteTextChar
 {mso-style-name:"Endnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Endnote Text";
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-bidi-language:EN-US;}
span.pmterms11
 {mso-style-name:pmterms11;
 mso-style-unhide:no;
 color:black;
 font-weight:bold;
 font-style:normal;}
span.term1
 {mso-style-name:term1;
 mso-style-unhide:no;
 font-weight:bold;}
span.pmterms21
 {mso-style-name:pmterms21;
 mso-style-unhide:no;
 color:black;
 font-weight:bold;
 font-style:normal;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-10-0215-CV\(A\)%20%20Opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-10-0215-CV\(A\)%20%20Opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-10-0215-CV\(A\)%20%20Opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-10-0215-CV\(A\)%20%20Opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-10-0215-CV\(A\)%20%20Opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
 /* List Definitions */
 @list l0
 {mso-list-id:515536294;
 mso-list-type:hybrid;
 mso-list-template-ids:-1908904320 1576409558 67698713 67698715 67698703 67698713 67698715 67698703 67698713 67698715;}
@list l0:level1
 {mso-level-number-format:alpha-lower;
 mso-level-text:"\(%1\)";
 mso-level-tab-stop:none;
 mso-level-number-position:left;
 margin-left:.75in;
 text-indent:-.25in;}
@list l1
 {mso-list-id:1286814669;
 mso-list-type:hybrid;
 mso-list-template-ids:1642629532 2050509472 67698713 67698715 67698703 67698713 67698715 67698703 67698713 67698715;}
@list l1:level1
 {mso-level-number-format:alpha-lower;
 mso-level-text:"\(%1\)";
 mso-level-tab-stop:none;
 mso-level-number-position:left;
 margin-left:58.5pt;
 text-indent:-22.5pt;}
ol
 {margin-bottom:0in;}
ul
 {margin-bottom:0in;}
-->








NO. 07-10-0215-CV

 

IN THE COURT OF
APPEALS

 

FOR THE SEVENTH
DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL C

 

 MAY 5, 2011



 

 



 

 

EX
PARTE AJMAN A. ADIL 



 

 



 

 FROM THE 108TH DISTRICT COURT OF
POTTER COUNTY;

 

NO.
98,039-E; HONORABLE DOUGLAS R. WOODBURN, JUDGE



 

 



 

Before QUINN, C.J., and HANCOCK and
PIRTLE, JJ.

 

 

MEMORANDUM OPINION



            The State
of Texas appeals an order by the trial court expunging the arrest records of
Appellee, Ajman A. Adil.  In a single issue,
the State asserts the trial court erred by entering an order of expunction
because the evidence was legally and factually insufficient.  We affirm. 


Background

            On February 10, 2004, Appellee was
arrested and subsequently indicted by a Potter County Grand Jury for felony possession
of marijuana in an amount of two thousand pounds or less but more than fifty
pounds.[1]  On September 1, 2004, the indictment was
dismissed.[2]  

            More than five years later, on
October 22, 2009, Appellee filed a verified petition for expunction, requesting
that all criminal records and files pertaining to her February 10, 2004 arrest
be expunged.  See Tex.
Code Crim. Proc. Ann. articles 55.01 and 55.02 (West Supp. 2010).[3]  On November 5, 2009, the State filed its
answer wherein the State generally denied the allegations in Appellee's
petition, while specifically asserting that Appellee did not meet the
requirements of article 55.01(a)(2)(A)(ii), to-wit:
dismissal of an indictment due to mistake, false information, or other similar
reason indicating an absence of probable cause to believe that Appellee had
committed the offense or because it was void. 
In response to the State's averments, Appellee asserted the reason for the
dismissal was irrelevant to her petition because she was relying solely upon the
provisions of article 55.01(a)(2)(A)(i), to-wit: lapse of the applicable period
of limitations.[4]  

            On December 21, 2009, the trial
court conducted a hearing.  At that
hearing, counsel for the State appeared and announced that the "crux"
of the dispute was whether the statute of limitations had run or not.  See Tex. Code Crim. Proc.
Ann. art. 12.01 (West Supp. 2010). Specifically, the State asserted that the
time during which Appellee had resided outside the state should not be included
in computing whether or not the applicable limitations period had expired.  See Tex. Code Crim. Proc.
Ann. article 12.05 (West 2005). 
The State, therefore, sought to establish that Appellee had resided
outside the State of Texas during the period in question.     

            Receiving no objection from Appellee's
counsel, the State proceeded with the burden of persuasion by calling Appellee
as a witness.  The State offered evidence
that, since Appellee's arrest, she had been a resident of Rhode Island and,
with the exception of the three to four days she spent in Texas at the time of
her arrest, had not returned to Texas. 
Based on this evidence, the State argued that the applicable period of
limitation was tolled by the provisions of article 12.05.[5]  No other evidence was presented and the trial
court took the matter under advisement.  On
May 19, 2010, the trial court granted Appellee's petition for expunction.  Neither party requested findings of fact or
conclusions of law and this appeal followed. 





Expunction

            The right to expunction is neither a
constitutional nor common law right but, rather, a statutory privilege.  Quertermous v. State, 52 S.W.3d 862, 864 (Tex.App.--Fort Worth
2001, no pet.).  Therefore, in
expunction proceedings, trial courts "have no inherent or equitable power
to expunge criminal records"; Ex
parte M. R. R., 223 S.W.3d 499, 500 (Tex.App.--Amarillo 2006, pet. denied),
overruled in part on other grounds, State
v. Beam, 226 S.W.3d 392, 394-95 (Tex. 2007), and, if a trial court fails to
comply with the statutory procedures for expunction, it commits reversible
error.  State v. Echeverry, 267 S.W.3d 423, 425 (Tex.App.--Corpus Christi
2008, pet. denied).  However, because the
statute is remedial in nature, those statutory provisions should be liberally
construed.  Ex parte E. E. H. 869 S.W.2d 496, 497
(Tex.App.--Houston [1st Dist.] 1993, writ denied).  

            Expunction proceedings are
authorized by Chapter 55 of the Texas Code of Criminal Procedure and are
considered civil causes of action, not criminal.  Ex parte Wilson, 224 S.W.3d 860, 861 (Tex.App.--Texarkana 2007, no
pet.); Pitts v. State, 113 S.W.3d
393, 395 (Tex.App.--Houston [1st Dist.] 2003, no pet.).  Article 55.01 provides, in pertinent part, as follows:

(a)       A person who has been placed under a
custodial or noncustodial arrest for commission of either a felony or
misdemeanor is entitled to have all records and files relating to the arrest
expunged if:

*  
*   *

(2)       each of the following conditions exist:

(A)       An
indictment or information charging the person with the commission of a felony
has not been presented against the person for an offense arising out of the
transaction for which the person was arrested; or if an indictment or
information charging the person with commission of a felony was presented, the indictment
or information has been dismissed or quashed, and:

(i)         the limitations
period expired before the date on which a petition for expunction was filed
under Article 55.02; or

(ii)        the
court finds that the indictment or information was dismissed or quashed because
presentment had been made because of mistake, false information, or other
similar reason indicating an absence of probable cause at the time of the
dismissal to believe the person committed the offense or because it was void;

(B)       the person
has been released and the charge, if any, has not resulted in a final
conviction and is no longer pending and there was no court ordered community
supervision . . . and

(C)       the person has
not been convicted of a felony in the five years preceding the date of the
arrest.

 

 

            Even
though the burden of proving compliance with each statutory condition rests
with the petitioner, Taylor v. State,
266 S.W.3d 553, 556 (Tex.App.--Tyler 2008, pet. denied); Heine v. Texas Dep't of Public Safety, 92 S.W.3d 642, 646
(Tex.App.--Austin 2002, pet. denied), the trial court may rule on the verified
petition without conducting a formal hearing and without the consideration of
live testimony if it has at its disposal all the information it needs to
resolve the issues raised by the petition. 
Ex parte Wilson,
224 S.W.3d 860, 863 (Tex.App.--Texarkana 2007, no pet.).  




Standard of Review

            A trial
court's ruling on an expunction is reviewed under an abuse of discretion
standard; Ingram v. Tex. Bd. of Pardons
& Parole, No. 01-08-00973-CV, 2011 Tex.App. LEXIS
663, at *3 (Tex.App.--Houston [1st
Dist.] Jan. 27, 2011, no pet. h.) (mem. op.),
and a trial court abuses its discretion when it acts without reference to
guiding rules and principles or if its actions are arbitrary and unreasonable.  Downer v. Aquamarine Operators,
Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  

Discussion

            At the
outset, we note that the State's sole argument on appeal, that the trial court
abused its discretion by entering an order of expunction when the evidence
presented at trial was legally and factually insufficient, does not conform to
the argument presented to the trial court. 
On appeal, the State asserts Appellee wholly failed to meet her burden
of proof as to any of the statutory
requirements for an order of expunction because she failed to offer any evidence
whatsoever; whereas, before the trial court, the State's only contention was
that the provisions of article 55.01(a)(2)(A)(i) were
not met because Appellee failed to present evidence that she was present in the
state for more than three years. 
Therefore, to the extent the State contends that Appellee failed to meet
her burden of proof on any of the statutory requirements other than the
provisions of article 55.01(a)(2)(A)(i), the State has
waived those issues. Moser
v. Davis, 79 S.W.3d 162, 169 (Tex.App.--Amarillo 2002, no pet.).  In other words, by appearing before the trial
court and expressly limiting the contested issue to Appellee's presence within
the state, the parties effectively stipulated to the other statutory
conditions.

            Because the trial court could take
judicial notice that the period of
limitations, to-wit: three years, had elapsed between the dismissal of Appellee's
indictment and the filing of her petition for expunction, the trial court had
at its disposal all the information it needed to resolve the issues raised by
the petition.  Based on that information,
the trial court could have reasonably concluded that Appellee's compliance with
the statutory requirement of article 55.01(a)(2)(A)(i)
was sufficiently established.  

            Furthermore, to the extent the
States issue can be construed as contending that the trial court erred by misapplying
the provisions of article 12.05 to the undisputed facts, we note that not only
did the State fail to provide this Court with a succinct, clear and accurate
statement of that argument as required by Texas Rules of Appellate Procedure
38.1(h), she also failed to provide any argument or authority that the
provisions of article 12.05 applied to the unusual facts of this case where
accusations against Appellee had been dropped for more than the statutory
period of limitations.[6]  Accordingly, the State also waived this
argument.  Id.  Because we cannot say
the trial court acted without reference to guiding rules and principles or that
its actions were arbitrary and unreasonable, the States sole issue is
overruled.




Conclusion

            The trial
court's order of expunction is affirmed. 


                                                                                                

 

Patrick A. Pirtle

                                                                                                      Justice  

 

Quinn, C.J., concurring.

 











[1]See Tex.
Health & Safety Code Ann. § 481.121(b)(5) (West
2010).  





[2]The State's Motion to Dismiss recites as grounds for the dismissal that the
"[o]fficer failed to show for suppression hearing."





[3]Throughout the remainder of this
opinion, provisions of the Texas Code of Criminal Procedure will be cited as
either "article ____" or "art. ____."





[4]The applicable statute of limitations
for an offense under § 481.121(b)(5) of the Texas
Health & Safety Code, the offense for which Appellee was arrested, is three
years.  See Tex.
Code Crim. Proc. Ann. art. 12.01(7) (West Supp. 2010). 





[5]Article
12.05 provides, in pertinent part:

(a)   The
time during which the accused is
absent from the state shall not be computed in the period of limitation.

(Emphasis added).





[6]Tolling
provisions of article 12.05(a) only apply when the citizen has been effectively
accused of an offense.  Ex parte Matthews, 892 S.W.2d 208,
210-11 (Tex.App.--Houston [1st Dist.] 1995)(op. on
reh'g), affd, 933 S.W.2d 134
(Tex.Crim.App. 1996), overruled in part on
other grounds by Proctor v. State, 967 S.W.2d 840, 844 (Tex.Crim.App.
1998).